## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

ANGELICA BAILEY, KEVIN I. BAILEY,
MADISON BAILEY, and MIRLA ONTIVEROS,

      Plaintiffs,

v.

NICOLAS VIDAL, 8278865 CANADA,
INC., TRANS-WEST LOGISTICS INC.
d/b/a TRANS-WEST, SERVICE TRANS-
WEST INC., DOMA ENTRETIEN DE
TERRAIN, INTACT INSURANCE
COMPANY, a subsidiary of INTACT
FINANCIAL CORPORATION, and
SABINE GINGRAS,

      Defendants.

Civil Action No. 2:20-cv-00766_____

Honorable _____

### COMPLAINT

COME NOW the Plaintiffs, Angelica Bailey, Kevin I. Bailey, Madison Bailey and Mirla Ontiveros by and through their legal counsel, Clayton G. Anderson and The Masters Law Firm, lc to hereby complain against the Defendants, Nicolas Vidal, ("Defendant Vidal") and 8278865 Canada Inc., Trans-West Logistics Inc. d/b/a Trans-West, Service Trans-West Inc. and Doma Entretien de Terrain, (collectively "Corporate Defendants"), and Intact Insurance Company, a subsidiary of Intact Financial Corporation ("Intact") and Sabine Gingras ("Defendant Gingras" as follows:

PARTIES

1.    The Plaintiff, Angelica Bailey ("Plaintiff Angelica Bailey") is and at all relevant times hereto a citizen of West Virginia, residing in Rock, Mercer County, West Virginia.

2.      The Plaintiff, Kevin I. Bailey ("Plaintiff Kevin I. Bailey") is and at all relevant times hereto a citizen of West Virginia, residing in Rock, Mercer County, West Virginia.

3.      The Plaintiff, Madison Bailey ("Plaintiff Madison Bailey") is and at all relevant times hereto a citizen of West Virginia, residing in Rock, Mercer County, West Virginia.

4.      The Plaintiff, Mirla Ontiveros ("Plaintiff Mirla Ontiveros") is and at all relevant times hereto a citizen of West Virginia, residing in Rock, Mercer County, West Virginia.

5.      The Defendant, 8278865 Canada, Inc., ("Canada Inc."), upon information and belief, is a corporation in Quebec, Canada with a registered corporate address of 1900 52e AW, Lachine, Quebec H8T 2X9 Canada.

6.      The Defendant, Trans-West Logistics Inc. d/b/a Trans-West, ("Trans-West Logistics"), upon information and belief, is a corporation in Quebec, Canada with a registered corporate address at 1900 52e AW, Lachine, Quebec H8T 2X9 Canada.

7.      The Defendant, Service Trans-West Inc. ("Service Trans-West"), upon information and belief, is a corporation in Quebec, Canada with a registered corporate address at 1900 52e AW, Lachine, Quebec H8T 2X9 Canada.

8.      The Defendant, Doma Entretien de Terrain ("Doma"), upon information and belief, is a corporation in Quebec, Canada with a registered corporate address at 825 Av Dumaire, Laprairi, Quebec J5R 5L7 Canada.

9.      Nicolas Vidal, upon information and belief, is an adult individual who resides at 1326 Rang du Brule, St. Antoine Sur Richelieu, Quebec, J0L 1R0Canada.

10.     Intact Insurance Company, upon information and belief, is a subsidiary of Intact Financial Corporation with a registered corporate address at 700 University Ave., Suite 1500-A Toronto, ON MG 0A1 Canada.

11.     Sabine Gingras, upon information and belief, is an adult individual who worked as an agent of Intact Insurance Company.  Specifically, Defendant Gingras was the claims adjuster assigned to the property damage claim that resulted form the subject crash.

12.     At all relevant times, Intact Insurance Company provided insurance coverage to Corporate Defendants under the trademark "OneBeacon," a company acquired by Intact prior to the date of incident.

13.     The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards and local ordinances that govern the qualification, training and retention of professional tractor trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of motor carriers, commercial motor vehicles and professional tractor trailer drivers.

14.     At all times relevant hereto, Corporate Defendants, were or should have been authorized interstate motor carriers authorized to transport goods in interstate commerce and in the State of West Virginia pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"), or both.

15.     Accordingly, Corporate Defendants were subject to all state and federal laws, statutes regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, the West Virginia Motor Vehicle Code and the Federal Motor Carrier Safety Regulations ("FMCSR") subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49- Transportation.

16.     Each company, in order to obtain a DOT number had to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that Corporate Defendants have access to and are familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Defendants will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

17.     More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carriers Safety Administration that, at a minimum, Corporate Defendants:

   a.  had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

   b.  can produce a copy of the FMCSRs;

   c.  had and will have in place a driver safety training/orientation program;

   d.  had and will have prepared and maintain an accident register;

   e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

   f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

   g.  is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

   h.  must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

18.     Representatives of Corporate Defendants swore under the penalty of perjury to comply with the above "Safety Certifications."

19.     At all times relevant hereto, Defendant Vidal was a class A licensed motor vehicle

operator driving a Tractor Trailer (herein collectively referred to as "Tractor Trailer"). Accordingly, Defendant Vidal was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers including, without limitation, The West Virginia Motor Vehicle Code and the FMCSRs set forth in 49 C.F.R. parts 350-398.

20.     At all times relevant hereto, and upon information and belief, the Tractor Trailer was owned by Corporate Defendants and was being operated by Defendant Vidal at the direction and under the control of Corporate Defendants.

21.     At all times relevant hereto, Defendant Vidal was employed and/or contracted to perform services for Corporate Defendants under Corporate Defendants' operating authority and was subject to Corporate Defendants' control or right to control, such that Corporate Defendants should be considered his actual and statutory employer and therefore vicariously liable for Defendant Vidal's negligence.

22.     At all times relevant hereto, Defendant Vidal was employed and/or contracted to perform services for and was operating a commercial motor vehicle for Corporate Defendants in its affairs and was subject to Corporate Defendants control or right of control such that Defendants should be considered his employer and therefore vicariously liable or Defendant Vidal's negligence.

23.     At all times relevant hereto, Corporate Defendants acted as a single entity.

24.     At all times relevant hereto, Corporate Defendants operated and conducted business as a single entity.

25.     Accordingly, Corporate Defendants are personally liable, jointly and severely, in partnership, joint venture or sole proprietorship for the crash and resulting permanent injuries and

damages suffered by Plaintiffs, claimed herein.

26.     At all relevant times hereto, Corporate Defendants acted as a motor carrier as well as the broker and freight forwarder of the load being transported at the time of the crash.

27.     Each Defendant acted in a manner that either alone or combined and occurring directly and proximately caused the incident and the resulting injuries suffered to the Plaintiffs.

28.     At all relevant times hereto, Defendant Vidal was the agent, servant, workman, and/or employee of Corporate Defendants.

29.     At all relevant times hereto, Corporate Defendants were liable for the actions and/or inactions of Defendant Vidal.

30.     At all relevant times hereto, Corporate Defendants were liable for the actions and/or inactions of Defendant Vidal as though the actions and/or inactions were performed by the entity itself. At all relevant times hereto, Defendant Gingras was the agent, servant, workman, and/or employee of Defendant Intact.

31.     At all relevant times hereto, Defendant Intact was liable for the actions and/or inactions of Defendant Gingras.

32.     At all relevant times hereto, Defendant Intact was liable for the actions and/or inactions of Defendant Gingras as though the actions and/or inactions were performed by the entity itself.

33.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to W.Va. Code §24A-1-1, et. seq.

## JURISDICTION AND VENUE

34.     The Court possess jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

35.     Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b)(2), in the United

States Southern District Court of West Virginia because the Southern District of West Virginia is where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

36.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

37.     On or about November 25, 2018, at approximately 5:55 a.m., Plaintiff Angelica Bailey was the operator of a 2016 Kia Forte, owned by Kevin D. Bailey, traveling in a northbound direction, along Interstate Highway 77 (I-77), near mile marker 73 in Kanawha County, West Virginia whereby Plaintiffs Kevin I. Bailey, Madison Bailey and Mirla Ontiveros were passengers.

38.     On or about the aforesaid date at the aforesaid time, Nicolas Vidal was the operator of a 2016 Kenworth commercial semi-tractor, with an attached commercial trailer, owned by Corporate Defendants, traveling in a northbound direction, near mile marker 73 on I-77, in Kanawha County, West Virginia.

39.     On or about the aforesaid date, at the aforesaid time and location, the Plaintiffs' vehicle was traveling in the right lane heading northbound of I-77, when suddenly and without warning her vehicle was struck in the side by the Defendants' vehicle, the force of which spun the Plaintiffs' vehicle across roadway into the path of another vehicle, causing her vehicle to be struck again, before coming to a rest on the right shoulder of the roadway.

40.     At all relevant times hereto, the Plaintiff Angelica Bailey operated her motor vehicle in a non-negligent manner.

41.     As a result of incident, the Plaintiffs suffered serious and permanent injuries. As a direct and proximate result of the negligence, carelessness and/or recklessness of the Defendants,

the Plaintiffs sustained serious and permanent physical injuries, including, but not limited to:

**PLAINTIFF ANGELICA BAILEY:**

a.   Strain of muscle, fascia and tendon of lower back;

b.   Suprapatellar bilateral knee joint effusions and/or hemarthrosis;

c.   Concussion;

d.   Chronic post traumatic headaches;

e.   Memory loss;

f.   Incontinence;

g.   Mental anguish;

h.   Severe damages to her nerves and nervous system; and

i.   various other ills and injuries, some of which are yet to develop based on her underlying injuries, and some or all of which may be permanent in nature, the injuries which have caused her great pain and suffering, incapacitated her from pursuing her usual activities, and have left her with permanent disabilities that will in the future similarly incapacitate her.

**PLAINTIFF KEVIN I. BAILEY:**

a.   Cervicalgia;

b.   Thoracic spine pain;

c.   Neck pain;

d.   Upper back pain;

e.   Mental anguish;

f.   Severe damages to her nerves and nervous system; and

g.   various other ills and injuries, some of which are yet to develop based on his underlying injuries, and some or all of which may be permanent in nature, the injuries which have caused him great pain and suffering, incapacitated him from pursuing his usual activities, and have left him with permanent disabilities that will in the future similarly incapacitate him.

**PLAINTIFF MADISON BAILEY:**

a.  Comminuted fracture of the anterior superior right pubic ramus;

b.  Nondisplaced buckle fracture of the right inferior pubic ramus;

c.  Small cortical fracture of the anterior aspect of the superior right sacrum with nondisplaced right-sided sacral fracture involving multiple sacral segments;

d.  Persistent pain, tenderness and range of motion abnormalities of the lumbar spine

e.  Pain, tenderness and range of motion abnormalities of the right hip

f.  High risk for intrapartum complications resulting in difficulty in bearing a child and labor;

g.  Limping, loss of mobility and chronic pain;

h.  Bladder leakage, headaches and popping and cracking in the hips and lower back;

i.  Mental anguish;

j.  Severe damages to her nerves and nervous system; and

k.  various other ills and injuries, some of which are yet to develop based on her underlying injuries, and some or all of which may be permanent in nature, the injuries which have caused her great pain and suffering, incapacitated her from pursuing his usual activities, and have left her with permanent disabilities that will in the future similarly incapacitate her.

**PLAINTIFF MIRLA ONTIVEROS:**

a.  Injuries to her arms and soreness throughout her body whereby she becomes weak;

b.  Additional pressures of becoming caregiver for Plaintiff Angelica Bailey;

c.  Mental anguish;

d.  Severe damages to her nerves and nervous system; and

e.  various other ills and injuries, some of which are yet to develop based on her underlying injuries, and some or all of which may be permanent in nature, the injuries which have caused her great pain and suffering, incapacitated her from pursuing her usual activities, and have left her with permanent disabilities that will in the future

similarly incapacitate her.

42.     As a result of the aforesaid injuries, the Plaintiffs sustained physical pain and suffering, all of which have required or will require medical care and treatment and are or may be permanent in nature.

43.     The Plaintiffs continue to require treatment for the aforesaid injuries.

44.     All of the treatment for the Plaintiffs' injuries has been deemed reasonable and necessary.

45.     As a result of the aforesaid injuries, the Plaintiffs sustained a loss of the everyday pleasures and enjoyments of life, and may continue to suffer the same for an indefinite period of time into the future.

46.     As a result of the aforesaid injuries, the Plaintiffs suffered embarrassment and humiliation, and may continue to suffer the same for an indefinite period of time into the future.

47.     As a result of the aforesaid injuries, the Plaintiffs have been obligated to expend various sums of money and incur various expenses for medical treatment and may be obligated to do so into the future.

48.     As a result of the aforesaid injuries, the Plaintiffs sustained an impairment of her earning capacity potential.

49.     At all relevant times hereto, the Plaintiffs acted in a safe, prudent and reasonable manner and in no way contributed to their injuries or damages.

50.     At all relevant times hereto, the Corporate Defendants were vicariously responsible for the acts and omissions of its employee driver.

COUNT I
NEGLIGENT and/or RECKLESS HIRING, SUPERVISION, RETENTION
OF CORPORATE DEFENDANTS

51.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

52.     Corporate Defendants had an obligation/duty to supervise drivers who operate their vehicles in a safe manner.

53.     Corporate Defendants had an obligation/duty to hire drivers that are qualified and capable of operating a commercial motor vehicle.

54.     Corporate Defendants selected a driver that was incapable and unqualified to operate a commercial motor vehicle.

55.     Plaintiffs were injured as a result of an incident related to Defendant Vidal's driving, more specifically, Defendant Vidal's unsafe driving.

56.     The negligence, carelessness, and/or recklessness of Corporate Defendants, individually and through individuals driving its commercial motor vehicles including Defendant Vidal, consisted of the following:

a.   Failing to properly hire, train, monitor and/or supervise its drivers including Defendant Vidal;

b.   Failing to train and/or properly train Defendant Vidal prior to allowing him to operate its Tractor Trailer;

c.   Failing to supervise Defendant Vidal despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d.   Failing to supervise Defendant Vidal despite the fact that he had a propensity for driving violations;

e.   Failing to supervise Defendant Vidal despite the fact that he had a propensity for violating "Rules of the Road" and FMCSR;

f.   Failing to perform alcohol and/or drug tests after the crash;

g.   Failing to do preventable analysis as recommended by the FMCSR;

h.  Failing to have an appropriate disciplinary policy within the company;

i.  Failing to supervise Defendant Vidal despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

j.  Permitting Defendant Vidal to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

k.  Failing to train and/or properly train Defendant Vidal prior to allowing him to operate its Tractor Trailer;

l.  Allowing Defendant Vidal to operate tractor trailer in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

m.  Failing to adopt appropriate employee manuals and/or training procedures;

n.  Failing to enforce both written and unwritten policies of Corporate Defendants;

o.  Failing to ensure that its drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

p.  Failing to implement and/or enforce an effective safety system, as required by OP-1 agreement the Defendants executed with the DOT;

q.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

r.  Failing to ensure that is employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

s.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

t.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

u.  Failing to monitor and/or regulate its drivers' actions;

v.  Failing to do annual reviews as required by the FMCSR;

w.  Failing to monitor and/or regulate its drivers' hours;

x.  Failed to have an auditing system in place to audit its drivers' logs, or if they did have a system in place, they failed to use it appropriately;

y.  Failed to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, they failed to use it appropriately;

z.  Failing to have policy or mechanism in place to address cumulative fatigue in its drivers;

aa.  Placing more emphasis on profits than on safety of its drivers and the motor public;

bb.  Failing to maintain an accident register in accordance with the FMCSR;

cc.  Knowingly violating federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles;

dd.  Failing to act upon and remedy violations of FMCSA regulation 395;

ee.  Failing to act upon and remedy violations of FMCS regulation 383;

ff.  Failing to act upon and remedy known violations of industry standards;

gg.  Acting in conscious disregard for the rights and safety of the Plaintiffs;

hh.  Failing to have appropriate policies and procedures with regard to the hiring of its drivers;

ii.  Failing to follow the written and/or unwritten policies and procedures with regard to the supervising of its drivers;

jj.  Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

kk.  Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers; and

ll.  Consciously disregarding federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles.

57.     As a result of the above-stated acts and omissions, Plaintiffs have suffered such harm as has been previously stated herein.

WHEREFORE, Plaintiffs hereby demand judgment against Corporate Defendants in excess of Seventy-Five Thousand dollars ($75,000.00) for compensatory damages, punitive

damages, interest and such other relief as this Court deems just.

## COUNT II
## NEGLIGENT/RECKLESSNESS OF DEFENDANT VIDAL

58.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

59.     On November 25, 2018, Plaintiff Angelica Bailey was operating a 2016 Kia Forte on I-77 near mile marker 73 in Kanawha County, West Virginia.  Said vehicle was occupied with passengers including Plaintiff Madison Bailey, Plaintiff Kevin I. Bailey, and Plaintiff Mirla Ontiveros.

60.     On this same date and at the same time, Defendant Vidal was operating a 2016 Kenworth and traveling in the same direction as Plaintiffs near mile marker 73 on I-77 in Kanawha County, West Virginia.

61.     On this same date and at the same time, Defendant Vidal negligently, carelessly, recklessly, wrongfully, and unlawfully failed to maintain control of his vehicle, failed to keep a proper lookout, crossed into the lane of travel Plaintiffs occupied, and drove recklessly in disregard of the safety of the Plaintiffs, causing his vehicle to crash into the side of the vehicle in which Plaintiff Angelica Bailey was operating.

62.     The actions and/or inactions of Defendant Vidal consisted of, but is not limited to, the following:

      a.   Failing to maintain proper and adequate control of the tractor trailer so as to avoid crashing into Plaintiffs;

      b.   Driving carelessly;

      c.   Failing to pay proper attention while operating his Tractor Trailer;

d.  Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the collision that occurred with the Plaintiffs;

e.  Operating his Tractor Trailer in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiffs;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

h.  Failing to remain alert;

i.  Traveling at an excessive rate of speed under the circumstances;

j.  Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailer;

k.  Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

l.  Failing to properly control his Tractor Trailer in light of the circumstances then and there existing;

m.  Failing to make necessary and reasonable observations while operating his tractor trailer;

n.  Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the vehicle operated by Plaintiff Angelica Bailey;

o.  Failing to timely and properly apply his brakes;

p.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

q.  Consciously choosing to operate his Tractor Trailer at an unsafe speed;

r.  Consciously choosing to strike Plaintiffs;

s.  Consciously choosing to disregard the rules of the road and the Federal Motor Carrier Safety Regulations;

t.  Failing to perform proper pre-trip inspection;

u.  Violating both the written and unwritten policies, rules, guidelines and regulations of Defendants;

v.  Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

w.  Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

x.  Violating FMCSA Regulation 395 dealing with hours of service;

y.  Failing to adhere to the amount of driving hours limit;

z.  Striking Plaintiffs due to being on the road for more than the regulated number of hours;

aa. Consciously choosing to drive over the regulated number of hours;

bb. Consciously choosing not to pull his Tractor Trailer over when the regulated number of hours on the road was met;

cc. Acting with a conscious disregard for the rights and safety of Plaintiffs; and

dd. Failing to act upon and remedy violations of FMCSA regulation 383.

63.     During all relevant times, Plaintiffs were conducting themselves in a reasonable and non-negligent manner.

64.     As a direct and proximate cause of the above stated acts and omissions, Plaintiffs suffered, inter alia, the serious, severe, and permanent injuries as has been previously stated herein.

WHEREFORE, Plaintiffs hereby demand judgment against Defendant Vidal in excess of Seventy-Five Thousand dollars ($75,000.00) for compensatory damages, punitive damages, interest and such other relief as this Court deems just.

COUNT III
NEGLIGENT/RECKLESSNESS OF CORPORATE DEFENDANTS
as being vicariously liable for Nicolas Vidal

16

65.     The preceding paragraphs are incorporated herein by reference as if fully set forth herein at length.

66.     The negligence, carelessness and/or recklessness of Corporate Defendants, as being vicariously liable for Defendant Vidal, consisted of, but is not limited to, the following:

a.  Failing to maintain proper and adequate control of the tractor trailer so as to avoid crashing into Plaintiffs;

b.  Driving carelessly;

c.  Failing to pay proper attention while operating his Tractor Trailer;

d.  Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the collision that occurred with the Plaintiffs;

e.  Operating his Tractor Trailer in a negligent, careless and reckless manner without due regard for the rights and safety of Plaintiffs;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

h.  Failing to remain alert;

i.  Traveling at an excessive rate of speed under the circumstances;

j.  Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailer;

k.  Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

l.  Failing to properly control his Tractor Trailer in light of the circumstances then and there existing;

m.  Failing to make necessary and reasonable observations while operating his tractor trailer;

n.  Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the vehicle operated by the Plaintiff Angelica Bailey;

o.   Failing to timely and properly apply his brakes;

p.   Violating FMCSA Regulation 383 dealing with required knowledge and skills;

q.   Consciously choosing to operate his Tractor Trailer at an unsafe speed;

r.   Consciously choosing to strike Plaintiffs;

s.   Consciously choosing to disregard the rules of the road and the Federal Motor Carrier Safety Regulations;

t.   Failing to perform proper pre-trip inspection;

u.   Violating both the written and unwritten policies, rules, guidelines and regulations of Defendants;

v.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

w.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

x.   Violating FMCSA Regulation 395 dealing with hours of service;

y.   Failing to adhere to the amount of driving hours limit;

z.   Striking Plaintiffs due to being on the road for more than the regulated number of hours;

aa.  Consciously choosing to drive over the regulated number of hours;

bb.  Consciously choosing not to pull his Tractor Trailer over when the regulated number of hours on the road was met;

cc.  Acting with a conscious disregard for the rights and safety of Plaintiffs; and

dd.  Failing to act upon and remedy violations of FMCSA regulation 383.

67.   As a result of Corporate Defendants' negligence, carelessness and/or recklessness, the Plaintiffs suffered the above-mentioned harm.

WHEREFORE, Plaintiffs hereby demand judgment against Corporate Defendants in excess of Seventy- Five Thousand dollars ($75,000.00) for compensatory damages, punitive

damages, interest and such other relief as this Court deems just.


COUNT IV
NEGLIGENT ENTRUSTMENT OF CORPORATE DEFENDANTS

68.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

69.     Corporate Defendants had a duty to use due care in choosing a careful and competent driver.

70.     Corporate Defendants entrusted the tractor Trailer to Defendant Vidal despite the fact that Defendant Vidal failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate a tractor trailer.

71.     Corporate Defendants knew or should have known that Defendant Vidal failed to possess the knowledge, skill, experience, available equipment and personal characteristics to transport freight and/or goods without creating an unreasonable risk to operate a Tractor Trailer without creating an unreasonable risk of injury to others.

72.     Because Corporate Defendants entrusted the Tractor Trailer to an incompetent driver, Defendants are liable for any negligent and/or reckless conduct of Defendant Vidal.

73.     Corporate Defendants was negligent entrusting the Tractor Trailer to Defendant Vidal, when it knew or should have known with the exercise of reasonable due care that Defendant Vidal lacked the necessary skill, judgment, and/or prudence with which to operate the vehicle.

74.     Corporate Defendants was negligent and/or reckless in entrusting the Tractor Trailer to Defendant Vidal, when it knew or should have known with the exercise of reasonable care that Defendant Vidal had a propensity to cause motor vehicle collisions.

75.     Corporate Defendants was negligent in entrusting the Tractor Trailer to Defendant

Vidal, when it knew or should have known with the exercise of reasonable care that Defendant Vidal had a propensity to violate the motor vehicle code.

76.     At all relevant times, Corporate Defendants had a duty to ensure that it had appropriate hiring practices that put competent drivers behind the wheel.

77.     At all relevant times, Corporate Defendants had a duty to ensure that it had appropriate policies in place to ensure that its drivers did not violate FMCSA regulation 395 "hours of service" and/or regulation 383 "required knowledge and skill."

78.     Corporate Defendants knew or in the exercise of reasonable care should have known that entrusting the Tractor Trailer to Defendant Vidal would likely cause harm to the motoring public such as the harm that was caused on November 25, 2018 to Angelica Bailey.

79.     Corporate Defendants had a duty to entrust the Tractor Trailer to an attentive and skilled driver.

80.     Corporate Defendants failed to ensure that it hired and retained attentive skilled drivers.

81.     Corporate Defendants had an obligation and duty to entrust the Tractor Trailer to drivers who operate their vehicles in a safe manner.

82.     Angelica Bailey was injured as a result of the Defendant Vidal's unsafe driving.

83.     By entrusting the Tractor Trailer to Defendant Vidal, Corporate Defendants acted in conscious disregard to the rights and safety of Angelica Bailey.

84.     As a result of the above-stated acts and omissions, Angelica Bailey has suffered such harm as has been previously stated herein.

WHEREFORE, Plaintiffs hereby demand judgment against Corporate Defendants in excess of Seventy- Five Thousand dollars ($75,000.00) for compensatory damages, punitive

damages, interest and such other relief as this Court deems just.


## COUNT V
## JOINT VENTURE

85.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

86.     On the above referenced, date, place, and time, Corporate Defendants were engaged in a joint venture to haul goods for profit.

87.     Upon information and belief, Defendant Vidal was paid by Corporate Defendants for this transportation, including allowances for fuel costs.

88.     Upon information and belief, Corporate Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

89.     As a result of this transportation, Corporate Defendants earned, or intended to earn, a profit.

90.     On the above referenced, date, place, and time, Corporate Defendants controlled the Tractor Trailer through its duly authorized agent, servant, and/or employee, Defendant Vidal.

91.     On the above referenced, date, place, and time, Defendant Vidal was performing a service for the benefit of Corporate Defendants namely the transportation of goods and material for profit.

92.     Corporate Defendants were aware Defendant Vidal was transporting the goods and materials.

93.     Corporate Defendants had the right to control Defendant Vidal in performing this service.

94.     Corporate Defendants exercised this control over Defendant Vidal, inter alia, in the manner described herein.

95.     Corporate Defendants held out Defendant Vidal as an agent, servant, and/or employee, such that a reasonable person would conclude that Defendant Vidal was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Defendant Vidal.

96.     As a direct and proximate cause of the above stated acts and omissions, Plaintiffs suffered, inter alia, the serious, severe, and permanent injuries as has been previously stated herein.

WHEREFORE, Plaintiffs hereby demand judgment against Corporate Defendants in excess of Seventy-Five Thousand dollars ($75,000.00) for compensatory damages, punitive damages, interest and such other relief as this Court deems just.


COUNT VI
BREACH OF COVENANTS OF GOOD FAITH AND FAIR DEALING, AND VIOLATIONS
OF THE WEST VIRGINIA UNFAIR TRADE PROTECTION ACT BY INTACT
INSURANCE COMPANY AND SABINE GINGRAS

97.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

98.     On November 25, 2018, Defendant Vidal presented his insurance card to the investigating officer whereby Intact Insurance Company was listed as the insurance carrier for the subject Tractor Trailer operated by Defendant Vidal.

99.     As is routine and customary, Plaintiffs' counsel provided to Intact Insurance Company, through OneBeacon, a letter of representation dated February 22, 2019 informing Intact that Plaintiffs were a represented party and further directing all future correspondences to

Plaintiffs' legal counsel.

100.    Following this correspondence, Plaintiffs' counsel once again contacted OneBeacon regarding Plaintiffs' property damage claim on March 4, 2019 and further invited the insurance company to contact Plaintiffs' legal counsel to discuss the claim.

101.    On March 27, 2019, Plaintiffs' letter of representation was acknowledged by Sabine Gingras via electronic mail whereby she identified herself as the adjuster assigned to the property damage claim.

102.    Notwithstanding the multiple letters sent to and received by OneBeacon on behalf of Intact and her telephone conversation with the undersigned on March 27, 2019, Sabine Gingras, in her capacity as an agent for Intact, contacted Plaintiff Angelica Bailey directly on March 28, 2019 to discuss the crash.

103.    Despite her knowledge of the existence of Plaintiffs' legal counsel, Sabine Gingras, in her capacity as an agent for Intact, acted deceptively and in bad faith and contacted Plaintiff Angelica Bailey and attempted to violate the attorney-client privilege.

104.    That by engaging in the aforesaid conduct, Intact engaged in unfair and deceptive claim settlement practices as se forth in West Virginia Code § 33-11-4, et. seq.

105.    That Intact, together with its employee, Sabine Gingras, failed and refused to comply with their duties and responsibilities under West Virginia law.

106.    That by engaging in the aforesaid conduct, Defendants Intact and Sabine Gingras engaged in unfair and deceptive claim settlement practices.

107.    Defendants Intact and Sabine Gingras intentionally breached their duties and implied contractual duties owed to Plaintiffs by attempting to contact Plaintiff Angelica Bailey to discuss her bodily injury and property damage claim.

108.    Defendants, Intact and Gingras were in a fiduciary relationship with Plaintiffs and were under a duty to use the skill, care, and knowledge of other claims representatives and underwriters practicing as insurance claims representatives and underwriters in evaluating and investigating claims made by claimants in a prompt and thorough manner.

109.    Notwithstanding Intact's knowledge of Plaintiffs' legal representation by The Masters Law Firm, lc, Intact's agent Sabine Gingras contacted Plaintiff Angelica Bailey in violation of the attorney-client privilege.

110.    Sabine Gingras knew that Plaintiff Angelica Bailey was represented by legal counsel.

111.    Defendant Sabine Gingras intentionally, recklessly, or, in the alternative, negligently contacted Plaintiff Angelica Bailey in violation of the attorney-client privilege.

112.    At the time the above unlawful contact was made by Sabine Gingras, she had no reasonable grounds for making contact with Plaintiff Angelica Bailey as Plaintiff Angelica Bailey was a represented person.

113.    The above contact was contrary to West Virginia law in the adjustment of insurance claims arising in West Virginia.

114.    The actions of Intact's adjustor, Sabine Gingras, constitute willful, wanton and intentional violations of the Unfair Trade Practice Act and applicable insurance regulations.

115.    As a direct and proximate result of the above unlawful contact made by Defendant Sabine Gingras, Plaintiffs have suffered and will continue to suffer.

WHEREFORE, the Plaintiffs demand judgment of and from Defendants Intact and Sabine Gingras for punitive and compensatory damages in an amount to be determined by a jury; a trial by jury; attorney fees; the costs and disbursements of this action; pre-judgment and post-judgment

24

interest; and any other future and general relief as the Court deems just and fair.

## COUNT VII
## CIVIL CONSPIRACY AS TO INTACT INSURANCE COMPANY AND SABINE GINGRAS

116.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

117.    Defendant Intact, by and through their agent Defendant Sabine Gingras, contacted Plaintiff Angelical Bailey despite their knowledge that she was a represented party.

118.    Defendant Intact, by and through their agents, had actual and/or constructive knowledge that Plaintiff Angelica Bailey was a represented party and that it would be unlawful to contact Plaintiff.

119.    The concerted actions of Defendant Intact, their agents and/or employees, as set forth in this Complaint, were done to accomplish the unlawful purpose of breaching the attorney-client privilege and/or were done by unlawful means.

120.    The concerted actions of Defendant Intact, their agents and/or employees constitute a civil conspiracy.

121.    Defendant Intact is directly liable for the actions of Defendant Sabine Gingras, in carrying out the civil conspiracy of wrongful acts set forth in this Complaint.

122.    As a direct and proximate result of the willful, wanton, malicious, reckless and/or negligent concerted actions in carrying out their civil conspiracy, the Plaintiffs suffered damages.

WHEREFORE, the Plaintiffs demand judgment of and from Defendants Intact and Sabine Gingras, for punitive and compensatory damages in an amount to be determined by a jury; a trial by jury; attorney fees; the costs and disbursements of this action; pre-judgment and post-judgment interest; and any other future and general relief as the Court deems just and fair.

PLAINTIFFS DEMAND A TRIAL BY JURY.


                                        ANGELICA BAILEY, KEVIN I. BAILEY,
                                        MADISON BAILEY, and MIRLA
                                        ONTIVEROS,

                                        By Counsel


/s/ Clayton G. Anderson
Clayton G. Anderson
West Virginia State Bar No. 7315
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
Telephone: (304) 342-3106
Facsimile: (304) 342-3189
CGA@themasterslawfirm.com
F:\I\1452\p002.docx